No. 13-2476

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

EXPERIMENTAL AIRCRAFT ASSOCIATION, INC.

*Petitioner,*

v.

FEDERAL AVIATION ADMINISTRATION, et al.,

*Respondents.*

_____

**Petition for Review and Other Relief**

_____

**BRIEF FOR HELICOPTER ASSOCIATION INTERNATIONAL, INC.
AS *AMICUS CURIAE* IN SUPPORT OF
PETITIONER AND REVERSAL**

_____

Daniel W. Wolff
   *Counsel of Record*
Gerald F. Murphy
Steven J. Seiden
CROWELL & MORING LLP
1001 Pennsylvania Ave, N.W.
Washington, DC 20004
202-508-8855
dwolff@crowell.com
gmurphy@crowell.com
sseiden@crowell.com

*Counsel for Amicus Curiae*

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **13-2476**

Short Caption:  **Experimental Aircraft Ass'n, Inc. v. FAA, et al.**

(1)   The full name of every party or *amicus* that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
   **Helicopter Association International Inc.**

(2)   The names of all law firms whose partners or associates have appeared for the party or *amicus* in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
   **Crowell & Moring LLP**

(3)   If the party or amicus is a corporation:

   i)   Identify all its parents corporations, if any; and
      **None. Helicopter Association International, Inc. has no parent corporations.**

   ii)   List any publicly held company that owns 10% or more of the party's or *amicus's* stock:
      **None. No publicly held company has any ownership interest in Helicopter  Association International, Inc.**

Attorney's Signature:   /s/ Gerald F. Murphy          Date: 12/9/13

Attorney's Printed Name: Gerald F. Murphy
                        Crowell & Moring LLP
                        1001 Pennsylvania Ave., N.W.
                        Washington, DC 20004

Phone Number:       (202) 508-8855
Fax Number:         (202) 628-5116
E-Mail Address:     gmurphy@crowell.com

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **13-2476**

Short Caption:  **Experimental Aircraft Ass'n, Inc. v. FAA, et al.**

(1)    The full name of every party or *amicus* that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
       **Helicopter Association International Inc.**

(2)    The names of all law firms whose partners or associates have appeared for the party or *amicus* in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
       **Crowell & Moring LLP**

(3)    If the party or amicus is a corporation:

      i)    Identify all its parents corporations, if any; and
           **None. Helicopter Association International, Inc. has no parent corporations.**

      ii)   List any publicly held company that owns 10% or more of the party's or *amicus's* stock:
           **None. No publicly held company has any ownership interest in Helicopter  Association International, Inc.**

Attorney's Signature:    /s/ Daniel W. Wolff          Date: 12/9/13

Attorney's Printed Name: Daniel W. Wolff
                        Crowell & Moring LLP
                        1001 Pennsylvania Ave., N.W.
                        Washington, DC 20004

Phone Number:       (202) 624-2621
Fax Number:         (202) 628-5116
E-Mail Address:     dwolff@crowell.com

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **13-2476**

Short Caption:  **Experimental Aircraft Ass'n, Inc. v. FAA, et al.**

(1)    The full name of every party or *amicus* that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
    **Helicopter Association International Inc.**

(2)    The names of all law firms whose partners or associates have appeared for the party or *amicus* in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    **Crowell & Moring LLP**

(3)    If the party or amicus is a corporation:

       i)    Identify all its parents corporations, if any; and
          **None. Helicopter Association International, Inc. has no parent corporations.**

       ii)    List any publicly held company that owns 10% or more of the party's or *amicus's* stock:
          **None. No publicly held company has any ownership interest in Helicopter  Association International, Inc.**

Attorney's Signature:   /s/ Steven J. Seiden      Date: 12/9/13

Attorney's Printed Name: Steven J. Seiden
                     Crowell & Moring LLP
                     1001 Pennsylvania Ave., N.W.
                     Washington, DC 20004

Phone Number:     (202) 624-2609
Fax Number:       (202) 628-5116
E-Mail Address:    sseiden@crowell.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

SUMMARY OF ARGUMENT AND INTEREST OF AMICUS CURIAE .................1

    I.    AVIATION USER FEES LIKE THOSE FAA HAS DEMANDED FROM PETITIONER ARE INCONSISTENT WITH THE WELL-ESTABLISHED STATUTORY SCHEME FOR FUNDING ATC SERVICES AND WILL INCREASE COSTS ON SMALL BUSINESSES. .........................................................................3

    II.    FAA'S GENERAL CONTRACTING AUTHORITY DOES NOT AUTHORIZE THE *ULTRA VIRES* USER FEES. ................................9

CONCLUSION .......................................................................................... 13

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A) ........................ 14

CERTIFICATE OF SERVICE ......................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Petroleum Inst. v. EPA,*
52 F.3d 1113 (D.C. Cir. 1995) ............................................................... 12

*Bhd. of Maint. of Way Emps. v. CSX Transp., Inc.,*
478 F.3d 814 (7th Cir. 2007) ................................................................. 13

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*
447 U.S. 102 (1980) ............................................................................. 11

*FDA v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000) ............................................................................. 12

*Lyng v. Payne,*
476 U.S. 926 (1986) ............................................................................. 11

*Massachusetts v. United States,*
435 U.S. 444 (1978) ............................................................................... 4

*Minard Run Oil Co. v. U.S. Forest Serv.,*
670 F.3d 246 (3d Cir. 2011) ................................................................. 11

*Morton v. Mancari,*
417 U.S. 535 (1974) ............................................................................. 12

*Motor Coach Indus., Inc. v. Dole,*
725 F.2d 958 (4th Cir. 1984) ................................................................ 13

*NMA v. U.S. Dep't of the Interior,*
105 F.3d 691 (D.C. Cir. 1997) .............................................................. 11

*Pac. Operators Offshore, LLP v. Valladolid,*
132 S. Ct. 680 (2012) ............................................................................. 8

*Russello v. United States,*
464 U.S. 16 (1983) ................................................................................. 6

*Ry. Labor Execs. Ass'n v. Nat'l Mediation Bd.,*
29 F.3d 655 (D.C. Cir. 1994) (en banc) .............................................. 11

*Seafarers Int'l Union v. U.S. Coast Guard*,
81 F.3d 179 (D.C. Cir. 1996) ................................................................ 4

*United States v. Pitt-Des Moines, Inc.*,
168 F.3d 976 (7th Cir. 1999) ................................................................ 6

*United States v. Sperry Corp.*,
493 U.S. 52 (1989) ................................................................................ 4

## Statutes & Rules

26 U.S.C. § 9502(d) ................................................................................ 5

31 U.S.C. § 9701(b)(2)(A) ...................................................................... 3

49 U.S.C. § 106 ...................................................................................... 10

49 U.S.C. § 106(l)(6) ................................................................... 9, 10, 11

Consolidated and Further Continuing Appropriations Act 2012, Pub. L. No. 112-55,
125 Stat. 552 (2011), *amended by* Pub. L. No. 112-175, 126 Stat. 1313 (2012),
Pub. L. No. 113-6, 127 Stat. 198 (2013) ................................................ 6

Fed. R. App. P. 32(a) ............................................................................ 15

Fed. R. App. P. 32(a)(5) ........................................................................ 15

Fed. R. App. P. 32(a)(6) ........................................................................ 15

Fed. R. App. P. 32(a)(7)(B) .................................................................... 15

Fed. R. App. P. 32(a)(7)(B)(iii) .............................................................. 15

Reducing Flight Delays Act of 2013, Pub. L. No. 113-9, 127 Stat. 443 (2013) ......... 10

## Other Authorities

Black's Law Dictionary ............................................................................ 8

FAA, *How the Trust Fund is Spent*,
http://www.faa.gov/about/office_org/headquarters_offices/apl/aatf/how_trustfund
_spent/ ...................................................................................................... 5

FAA, *New FAA Reform Legislation to Transform Air Travel for Millions of Flyers*
(Feb. 14, 2007),
http://www.faa.gov/news/press_releases/news_story.cfm?newsId=8163 ............... 8

HAI, *HAI President Matt Zuccaro on EAA Radio*,
http://www.rotor.com/Default.aspx?tabid=598 ....................................................... 4

HAI, *RotorNews: User Fee Issue Still Not Resolved: Act Now!* (Apr. 15, 2013),
http://www.rotor.com/Publications/RotorNews/tabid/843/articleType/ArticleView/
articleId/2360/User-Fee-Issue-Still-Not-Resolved-Act-Now.aspx ......................... 6

HAI, *RotorNews: U.S. GAO Supports Highway User Fees Scheme* (Jan. 9, 2013),
http://www.rotor.com/Publications/RotorNews/tabid/843/articleType/ArticleView/
articleId/145/US-GAO-Supports-Highway-User-Fees-Scheme.aspx...................... 4

Letter for Hon. James L. Oberstar, Chairman, Committee on Transportation and
Infrastructure, House of Representatives, from Gary L. Kepplinger, General
Counsel, Government Accountability Office, *Re: Federal Aviation
Administration—Authority to Auction Airport Arrival and Departure Slots and
to Retain and Use Auction Proceeds*,
(Sept. 30, 2008) ...................................................................................................... 12

National Business Aviation Association (NBAA),*NBAA Welcomes Representatives'
Clear Message to President Obama: No User Fees* (Apr. 8, 2013),
http://www.nbaa.org/news/pr/2013/20130408-028.php...................................... 6, 7

RotorPad, *HAI Legislative Call to Action: Oppose Aviation User Fees in the Federal
Budget* (Jan. 14, 2011), http://www.rotorpad.com/organizations/hai-legislative-
call-to-action-oppose-aviation-user-fees-in-the-federal-budget.html; ................... 4

U.S. Dep't of Transp., *Statement from the U.S. Department of Transportation* (May
10, 2013), http://www.dot.gov/briefing-room/statement-us-department-
transportation....................................................................................................... 10

## SUMMARY OF ARGUMENT AND INTEREST OF AMICUS CURIAE[1]

The question presented in this case is whether FAA may impose what amounts to user fees for air traffic control ("ATC") services in the national airspace system ("NAS") notwithstanding a lack of statutory authority to do so. Under basic principles of administrative law, the answer is no. Because FAA's position here could affect aircraft operations and other interests that extend far beyond those of the Experimental Aircraft Association ("Petitioner"), HAI appears as *amicus curiae* in support of Petitioner to urge this Court to grant the petition and hold that FAA acted *ultra vires* in demanding user fees from Petitioner for the provision of ATC services for aircraft operations related to Petitioner's AirVenture event in Oshkosh, Wisconsin.

Petitioner's opening brief demonstrates that (i) FAA had no rational basis to demand payment for ATC services at AirVenture when it had never done so before; (ii) how FAA lacks statutory authority to impose fees for ATC services in the first place; and (iii) why FAA's charge for ATC services represents an unlawful user fee. HAI submits this brief – with the consent of all parties – to offer the Court its unique perspective and, in particular, to shed further light on the dangerous policy implications of interpreting FAA's statutory authority, as FAA would have the Court do, in a manner that is not only inconsistent with its letter but would

---

[1] All parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part, and no party or party's counsel made a monetary contribution intended to fund its preparation or submission. No one other than HAI, its members, and their counsel made a contribution intended to fund the preparation or submission of this brief.

arguably give FAA unfettered discretion to charge user fees for ATC services that FAA is already required by law to provide. The agency posits that it may impose such user fees under the guise of its general contracting powers. If this Court were to agree, it would detrimentally impact the aviation industry above and beyond Petitioner's AirVenture event at Oshkosh, set a dangerous precedent for the general aviation community, and fundamentally alter the relationship between FAA and the entities to which it is obligated to provide ATC services.

HAI is a not-for-profit, professional trade association with approximately 3,000 members and affiliates, encompassing 1,600 member companies and organizations in more than 74 nations. HAI's members fly over 5,500 helicopters, log approximately 2.5 million flight hours per year, and include many small businesses. In existence for more than 60 years, HAI provides its membership with services that directly benefit their operations and advance the civil helicopter industry by providing programs that enhance safety, encourage professionalism, and promote the unique contributions vertical flight offers to society.

HAI and many of its members are also members of Petitioner EAA. Relevant to this case, HAI members contribute to the funding of the ATC system through aviation fuel excise taxes. Therefore, an HAI-member aircraft that flies to Oshkosh for AirVenture (or to any other event) will have already paid an aviation fuel excise tax "at the pump," and thus already paid for its fair share of ATC services that FAA will provide at that event.

As a leading advocate for the civil helicopter industry with members including aircraft operators-owners, airframe and engine manufacturers, industry suppliers,

service providers, pilots, mechanics/technicians, students and other individuals interested in the helicopter industry, HAI and its members have a legitimate interest in the outcome of this case. Specifically, HAI has a strong interest in ensuring proper interpretation, application and administration of the laws affecting the use of helicopters and, in turn, its members. FAA's position should be overturned because otherwise it would mean that NAS users, including HAI's members, would be left high and dry, subject to the brunt of user fees for the opportunity to use the ATC system *on top of* the aviation fuel excise taxes they already pay as required by statute.[2] FAA is essentially double dipping, without the statutory authority to do so. This Court should not permit it.

<u>**ARGUMENT**</u>

**I.     AVIATION USER FEES LIKE THOSE FAA HAS DEMANDED FROM PETITIONER ARE INCONSISTENT WITH THE LONG-ESTABLISHED STATUTORY SCHEME FOR FUNDING ATC SERVICES AND WILL INCREASE COSTS ON SMALL BUSINESSES.**

While not labeled as such by FAA, the charge it assessed Petitioner for ATC services to support AirVenture is nothing other than a "user fee" as that term has been used in statutes and interpreted in courts. The meaning of the term "user fee" as used in connection with Executive agencies is well established: it is simply a fee charged by the government that is set at least in part on the basis of "costs to the

---

[2] At the very least, NAS users are likely to feel FAA's user fee indirectly, in the form of higher membership and/or admission fees passed along by event organizers to recoup the additional charges for ATC services imposed by FAA.

Government," 31 U.S.C. § 9701(b)(2)(A),[3] and that generally is calibrated to recoup the cost of services provided to the user. User fees ensure that "those who specifically benefit from [the government's] services pay the cost" of those services.[4]

By charging for its ATC services at AirVenture, FAA has imposed a user fee on EAA – and indirectly imposed a user fee on EAA's members and other show attendees using such services in the form of higher membership fees or admission charges and the like that will be passed along to those members and attendees. HAI, like Petitioner,[5] has consistently taken the position that imposing aviation user fees on general aviation would have a negative impact on the industry and constitute an improper (as well as unnecessary) source of funding because existing aviation fuel excise taxes already sufficiently fund FAA programs and operations.[6] In this regard, HAI agrees with Petitioner that the existing aviation fuel excise tax system is the exclusive mechanism that FAA has been given by Congress to fund its ATC operations. Accordingly, HAI shares Petitioner's view that FAA's demand for

---

[3] *See also* Black's Law Dictionary (defining a "user fee" as "[a] charge assessed for the use of a particular item or facility").

[4] *Massachusetts v. United States*, 435 U.S. 444, 462-63 (1978); *see also United States v. Sperry Corp.*, 493 U.S. 52, 60-61 (1989); *Seafarers Int'l Union v. U.S. Coast Guard*, 81 F.3d 179, 182-83 (D.C. Cir. 1996).

[5] EAA and HAI have a long history of collaborating on issues affecting the aviation industry and many HAI members often participate at AirVenture in Oshkosh. *See, e.g.*, HAI, *HAI President Matt Zuccaro on EAA Radio*, http://www.rotor.com/Default.aspx?tabid=598.

[6] *See* RotorPad, *HAI Legislative Call to Action: Oppose Aviation User Fees in the Federal Budget* (Jan. 14, 2011), http://www.rotorpad.com/organizations/hai-legislative-call-to-action-oppose-aviation-user-fees-in-the-federal-budget.html; *see also* HAI, RotorNews: U.S. GAO Supports Highway User Fees Scheme (Jan. 9, 2013), http://www.rotor.com/Publications/RotorNews/tabid/843/articleType/ArticleView/articleId/1 45/US-GAO-Supports-Highway-User-Fees-Scheme.aspx.

payment for any extra ATC resources it allocates to AirVenture is an unlawful user fee.[7]

The issue of how NAS users can best contribute revenue to the federal government has been the subject of significant debate as part of the FAA reauthorization process.[8]  Yet, since the Airport and Airways Revenue Act of 1970 created the Airport and Airways Trust Fund (commonly known and referred to hereafter as the "Aviation Trust Fund"), FAA has been funded primarily by a series of aviation fuel excise taxes paid by NAS users.[9]  Currently, the Aviation Trust Fund covers all capital and operating costs for three of FAA's four major accounts (Facilities and Equipment; Research, Engineering and Development; and the Airport Improvement Program), and also provides a significant portion of the funding for FAA's Operations account (48 percent in 2011 and 43 percent in 2010).[10] The remaining portion of the Operations account is funded through the General Fund.[11]

The Aviation Trust Fund and General Fund, taken together, provide a sufficient stream of revenue to fund the FAA's programs and operations. Because this funding structure has generated a workable fiscal budget for FAA for over 40 years, Congress has repeatedly and unequivocally stated that FAA may not impose any

---

[7] *See* EAA Br. at 17-21.

[8] *Id*. at 17-19.

[9] *See* 26 U.S.C. § 9502(d).

[10] *See, e.g.,* FAA, *How the Trust Fund is Spent*, http://www.faa.gov/about/office_org/headquarters_offices/apl/aatf/how_trustfund_spent/.

[11] *Id*.

new aviation user fees without specific statutory authority.[12]   Indeed, Congress

firmly reasserted this position in the agency's fiscal 2013 appropriation: "[n]one of

these funds in this Act shall be available for [FAA] to finalize or implement any

regulation that would promulgate new aviation user fees not specifically authorized

by law after the date of the enactment of this Act."[13]  In fact, Congress contemplated

including new onerous aviation user fees in that legislation, but ultimately declined

to do so.[14]

   Notably, neither the House nor Senate budget proposals for Fiscal Year 2014

contain provisions for user fees on general aviation.[15]  To the contrary, the

groundswell of congressional opposition to such fees is so substantial that more

than 220 members of the U.S. House sent a letter to President Obama before the

release of his FY 2014 budget request to put him on notice that they opposed user

fees.[16]

   Congress' choice is also the sensible one. The current excise tax-based funding

system has practical benefits, in that it is transparent, easy to enforce, and efficient

---

[12] *See, e.g.*, EAA Br. At 18-19.

[13] Consolidated and Further Continuing Appropriations Act 2012, Pub. L. No. 112-55, 125 Stat. 552 (2011), *amended by* Pub. L. No. 112-175, 126 Stat. 1313 (2012), Pub. L. No. 113-6, 127 Stat. 198 (2013).

[14] *See, e.g.*, EAA Br. 18-19. The Court should therefore presume that FAA's lack of authority to collect user fees was intended by Congress. *See Russello v. United States*, 464 U.S. 16, 23-24 (1983).

[15] *See, e.g.*, HAI, *RotorNews: User Fee Issue Still Not Resolved: Act Now!*, (Apr. 15, 2013), http://www.rotor.com/Publications/RotorNews/tabid/843/articleType/ArticleView/articleId/2360/User-Fee-Issue-Still-Not-Resolved-Act-Now.aspx.

[16]  *See* Press Release*,* National Business Aviation Association (NBAA), *NBAA Welcomes Representatives' Clear Message to President Obama: No User Fees* (Apr. 8, 2013), http://www.nbaa.org/news/pr/2013/20130408-028.php.

to administer. Aviation fuel excise taxes, for example, are collected "at the pump" as a percentage of the cost of each gallon purchased by a NAS user, and then forwarded directly from the fuel vendor to the government for deposit into the Aviation Trust Fund.[17]  This system is inexpensive because no bureaucracy is required to run it and it is also progressive, insofar as those who travel more and burn more fuel contribute more to the system.[18]  Thus, the aviation fuel excise tax system, as it exists today, reflects general aviation's contributions to the costs of ATC services that are provided by FAA. HAI's members have been contributing to the costs of ATC services in precisely this way since the Trust Fund was established.

For these and myriad other policy reasons, Congress has explicitly prohibited FAA from imposing new user fees on the aviation community. Chief among the reasons for opposing user fees is that NAS users like Petitioner's and HAI's members are already contributing financially, through the aviation fuel excise tax system, commensurate to their share of the ATC services provided to them by FAA, and this does not change merely because of a special event, such as AirVenture.

Distilled to its core, FAA's rationale is that the ATC staffing and resource expenditures required to support the high volume of air traffic at Oshkosh during AirVenture justifies the agency's demand for additional funding. The agency's rationale is misleading: the volume of air traffic at a specific event is immaterial.

---

[17] *Id.*

[18] *Id.*

Any incremental increase in NAS activity necessarily correlates with an increase in aviation fuel excise taxes which will, in turn, be used to fund FAA's provision of ATC services. Imposing fees on top of those contributions – as FAA has done here – is exactly the type of agency action that Congress prohibited, whether FAA characterizes such as "user fees" or something else. If FAA is unhappy with the law, it is for Congress to change, not the agency through fiat. *See, e.g.*, *Pac. Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 690 (2012).

Simply put, the current funding structure is not only the exclusive source of funding available to FAA for performing ATC services, but Congress has thus far deemed it sufficient to keep our nation's ATC system running safely and efficiently. Allowing FAA's *ultra vires* action to stand in this instance would pervert the fundamental separation of powers doctrine and would give FAA unprecedented – and seemingly unlimited – discretion to augment its own appropriations to resolve budgetary challenges that may or may not be of its own making.[19]

Upholding FAA's position here would essentially give the agency license to impose user fees in contravention of long-established and clearly understood statutory authority for momentary budgetary convenience. This would be extremely disruptive to the many NAS users – especially many of HAI's small business

---

[19] FAA's sudden about-face on its ATC reimbursement policy is especially surprising given past statements the agency has made characterizing fees collected to support the development of FAA's new "NextGen" satellite-based ATC system as "user-fees" and implicitly acknowledging that imposing such fees would require congressional action. *See* Press Release, FAA, *New FAA Reform Legislation to Transform Air Travel for Millions of Flyers* (Feb. 14, 2007), http://www.faa.gov/news/press_releases/news_story.cfm?newsId=8163.

8

members – who depend on the predictability of the aviation fuel excise tax system for budgeting purposes. If, in fact, FAA has an additional taxing authority heretofore unheard of by HAI and its members, its members will not be able to ascertain with any reasonable certainty the added administrative costs that might be imposed on its operations throughout a given year, either directly or indirectly in the form of membership and/or attendance costs passed along by event organizers such as Petitioner.[20]

## II.    FAA'S GENERAL CONTRACTING AUTHORITY DOES NOT AUTHORIZE THE *ULTRA VIRES* USER FEES.

FAA cites its general contracting authority under 49 U.S.C. § 106(l)(6) ("Subpart 6") to defend its decision to impose fees on Petitioner for the AirVenture event at Oshkosh by way of a "reimbursable contract." But FAA's reliance on that statutory provision to extract fees for ATC services is a misguided, thinly veiled attempt to augment its budget in a manner that has been flatly rejected by Congress.

When Subpart 6 is read in context, it becomes clear that the FAA's reliance on Subpart 6 is exaggerated. Subpart 6, in pertinent part, provides:

> The Administrator is authorized to enter into and perform such contracts, leases, cooperative agreements, or other transactions as may be necessary to carry out the functions of the Administrator and the Administration. The Administrator may enter into such contracts, leases, cooperative agreements, and other transactions with any Federal agency (as such term is defined in section 551(1) of title 5) or any instrumentality of the United States, any

---

[20] Because FAA conceived of its authority outside the rulemaking process, without giving the affected public an opportunity to comment, it conveniently avoided the economic analysis of the impact its policy will have on small businesses, as the Regulatory Flexibility Act ("RFA") requires. *See* 5 U.S.C. §§ 601-612. The RFA adopts the definition of "small business" used in the Small Business Act, 15 U.S.C. § 632, which is 500 employees or less. Many of HAI's members are in that category.

State, territory, or possession, or political subdivision thereof, any other governmental entity, or any person, firm, association, corporation, or educational institution, on such terms and conditions as the Administrator may consider appropriate.

49 U.S.C. § 106(l)(6). Part 106 of the Federal Aviation Act, in which Subpart 6 resides, is a lengthy piece of legislation that sets out the framework of FAA authority, the scope of its responsibilities, staffing, and management.[21] Conspicuously absent from that statutory provision is *any mention* of funding for services that FAA is *required* to provide, much less language that would support FAA's illusory position that the agency's general contracting authority can be used to augment its funding allowance.

As Petitioner demonstrates in its opening brief, 49 U.S.C. § 106(l)(6) cannot reasonably be construed to authorize FAA's actions. Nowhere in that provision is reference made to the agency's ability to fund its ATC services by assessing user fees on ATC system users. Indeed, if § 106(l)(6) gave FAA such authority, there would have been no reason for Congress to address specifically funding, appropriations, and fees for ATC and other services in the Reducing Flight Delays Act of 2013[22] or myriad other federal legislation concerning FAA's funding.[23] Nor is

---

[21] *See generally* 49 U.S.C. § 106.

[22] Pub. L. No. 113-9, 127 Stat. 443 (2013); *see also* Press Release, U.S. Dep't of Transp., *Statement from the U.S. Department of Transportation* (May 10, 2013), http://www.dot.gov/briefing-room/statement-us-department-transportation (". . . USDOT has determined that the recently enacted Reducing Flight Delays Act of 2013 will allow [FAA] to transfer sufficient funds to end employee furloughs and keep the 149 low activity contract towers originally slated for closure in June open for the remainder of fiscal year 2013").

[23] *See* EAA Br. at 14-17.

10

HAI aware of any judicial decision or legislative history supporting FAA's interpretation of 49 U.S.C. § 106(l)(6). The language of the statute is controlling as to its powers and purpose, *see Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.* 447 U.S. 102, 108 (1980), and there is nothing in the language or history of 49 U.S.C. § 106(l)(6) that suggests Congress intended to give FAA the authority to do what it has done here. *See Lyng v. Payne*, 476 U.S. 926, 937 (1986) (pointing out the bedrock principle of administrative law that executive agencies, as creatures of Congress, have no power other than that specifically given to them by Congress).

Nor does it follow that FAA may charge Petitioner for its ATC services because such service fees are not expressly prohibited by Subpart 6. *See, e.g.*, *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 246, 252 (3d Cir. 2011) (rejecting argument that a limited grant of regulatory authority did not preclude more expansive regulation under agency's general regulatory authority because that would render the limited grant of authority superfluous and "has no logical stopping point and would therefore raise difficult constitutional questions"); *NMA v. U.S. Dep't of the Interior*, 105 F.3d 691, 695 (D.C. Cir. 1997) (rejecting agency argument that it could take an action because it was not expressly prohibited by statute, noting that such a rule would permit the agency to "enjoy virtually limitless hegemony") (citation omitted); *Ry. Labor Execs. Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 670-71 (D.C. Cir. 1994) (en banc) ("categorically" rejecting "suggestion that [agency] possesses plenary authority to act within a given area" where Congress had given it only "some" authority) (emphasis omitted). Given Congress' substantial concerns regarding FAA's imposition of new aviation user fees, it would be incongruous to

argue that Congress authorized FAA *sub silento* to obtain non-appropriations funding through the "back door" channel of its general contracting authority.[24]

As explained by Petitioner and in Part I, above, Congress has (i) prohibited FAA from collecting user fees and (ii) established the Aviation Trust Fund, funded by aviation fuel excise taxes on NAS users, to help fund FAA's provision of ATC services. The *corpus juris* that governs FAA activity must be read *in pari materia*. *See FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133 (2000). Thus, Subpart 6 cannot be read as authorizing ATC-service user fees that Congress has elsewhere prohibited and where there is already an established statutory funding mechanism for ATC services. Doing so would also ignore the bedrock canon of interpretation that laws that deal with a subject matter specifically (here, the prohibition on user fees and the aviation fuel excise tax funding system) control as to the specific subject over laws that deal with similar subject matter only generally (here, Subpart 6). *See, e.g., Morton v. Mancari*, 417 U.S. 535, 550-51 (1974); *Bhd. of Maint. of Way Emps. v. CSX Transp., Inc.*, 478 F.3d 814, 817 (7th Cir. 2007).

It is telling that the courts have seen similar behavior before from FAA. At least one court has criticized FAA for attempting to augment its appropriations outside of the normal, statutorily prescribed channels. In *Motor Coach Indus., Inc. v. Dole*, 725

---

[24] *See, e.g.*, Letter for Hon. James L. Oberstar, Chairman, Committee on Transportation and Infrastructure, House of Representatives, from Gary L. Kepplinger, General Counsel, Government Accountability Office, *Re: Federal Aviation Administration—Authority to Auction Airport Arrival and Departure Slots and to Retain and Use Auction Proceeds* (Sept. 30, 2008), at 10; *see also Am. Petroleum Inst. v. EPA*, 52 F.3d 1113, 1119-20 (D.C. Cir. 1995) (EPA cannot rely on general rulemaking authority to regulate air pollutant in a manner conflicting with authority specific to that pollutant and "cannot uncouple the first sentence of [Clean Air Act provision] from the rest of the section in order to expand its authority beyond the aims and limits of the section as a whole.").

F.2d 958, 968 (4th Cir. 1984), the Fourth Circuit considered the lawfulness of FAA's attempt to fund expanded bus transportation at Dulles International Airport through a special trust fund rather than going through the traditional federal procurement process. *Id.* at 961. Instead of requesting budget authority from Congress to purchase additional buses, FAA attempted what the court described as an "end-run around normal appropriation channels" by entering into agreements with airlines to fund the purchase of the buses in exchange for waived landing and mobile fees. *Id.* at 968. Upholding an injunction issued by the district court to halt FAA's plan, the Fourth Circuit lamented that "the trust arrangement . . . undermined the integrity of the congressional appropriation process" and emphasized that "[a]lthough the purpose for which the FAA sought the funds was laudable, its methods certainly cannot be praised." *Id.*

The Fourth Circuit's criticism of FAA's actions in *Motor Coach* resonates here. Whatever budgetary constraints FAA may be feeling in today's difficult political and budgetary climate, such challenges – real or imagined – do not excuse the agency's attempt to supplement its funding through its own devices.

## **CONCLUSION**

For the reasons explained in this and Petitioner's opening brief, HAI urges the Court to invalidate FAA's attempt to collect unlawful user fees.

Dated:  December 9, 2013              Respectfully submitted,

                                    /s/ Daniel W. Wolff

                                    *Counsel for Helicopter Association*
                                    *International, Inc.*

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)**

I, Daniel W. Wolff, certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as it contains 3775 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as qualified by Circuit Rule 32(b), as it has been prepared in a 12-point, proportionally spaced typeface, Century Schoolbook, with footnotes in 11-point type.

Dated:  December 9, 2013          /s/ Daniel W. Wolff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of December, 2013, I caused the

foregoing Brief for  Helicopter Association International, Inc. as *Amicus Curiae* in

Support of Petitioner and Reversal to be served on the following via the Electronic

Case Filing (ECF) service:

Alan L. Farkas
SmithAmundsen, LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601

Jeffrey A. Klang
Regional Counsel
Federal Aviation Administration
Great Lakes Region
Office of the Regional Counsel
O'Hare Lake Office Center
2300 East Devon Avenue
Des Plaines, Illinois 60018

Marc Warren
Chief Counsel (Acting)
Federal Aviation Administration
Office of the Chief Counsel
800 Independence Avenue SW
Washington, D.C. 20591

Mr. Benjamin M. Schultz
Department of Justice, Civil Division,
Appellate Staff
950 Pennsylvania Avenue, NW
Room 7211
Washington, D.C. 20530

Mr. Michael Jay Singer
Department of Justice, Civil Division,
Appellate Staff
950 Pennsylvania Avenue, NW
Room 7266
Washington, D.C. 20530

Dated:  December 9, 2013          /s/ Daniel W. Wolff